Ranney, J.
It is perfectly clear that the principle settled in Rhodes v. Cleveland, 10 Ohio, 159; McComb v. Akron, 15 Ohio, 474, and Akron v. McComb, 18 Ohio, 229, can have no application to the present controversy. In each of those cases, the liability of a municipal corporation, acting through subordinate agents, within the .scope of its authority, and without malice or negligence, was enforced, where the acts of such agents resulted in injury to the property of private invividuals. The propriety of investing such corporations with a power to imjjrove their streets, resulting often in indirect injury to private property, is conceded; but the cases rest upon the -clear principle of right and justice, which requires compensation to .go hand in hand with public benefit. And, when in the lawful exercise of these powors, private property must be injured for the common benefit of all, all should be held liable to make reparation; and, in the view of the judges-who concurred in these decisions, the principle was not without support from that section of the constitution of the state, which secures the inviolability of private property. I am aware that these cases have not commanded the universal assent of the profession, and,,as one member of this court, I am quite willing to reinvestigate the doctrines upon which they are founded, when a case shall arise in which it can properly be done; but, notwithstanding their very emphatic condemnation by a highly respectable judge in a sister state (Bronson, C. J., in Radcliff’s Ex’rs v. Mayor, etc., of Brooklyn, 4 Com. 204), I still think that the •obligation to make compensation in such eases can not be seriously •doubted; and the only question seems to be, whether it should not be uniformly provided by the legislature, as a matter of justice, when such improvements are authorized rather than afforded by .action in the courts of law.
*In the present case, it is not doubted that the corporation, under its authority to improve the streets of the city, had full power to build the bridge in question. The special verdict finds that the bridge was built by contract with the city council, upon Si plan furnished by the city engineer; and that its fall, which *96 occasioned the injury to the plaintiff, was owing to a defect in the plan, arising from the carelessness■ and unskillfulness of the-engineer.
The engineer was an officer of the city, elected by the people, and, among other things, charged with the duty of furnishing plans and specifications of this character. He acted in subordihation to, and under the direction of, the city council, although the charter and ordinances of the corporation defined the duties he-was required to perform. This action is grounded, therefore, upon the negligence and unskillfulness of the agent and officer of the corporation, resulting in injury to the plaintiff; and not, as in the-cases referred to, upon any claim of liability for injuries arising-from his lawful acts, while executing the orders of the council, and performed without malice or negligence. And the true question is, docs the corporation that elects him, directs what works he shall undertake, and for whose benefit he acts, become responsible-for the fidelity of his conduct, and liable to individuals for iujuries arising from his negligence and want of skill, while executing the lawful command of his employers ? "We have no doubt that it does; and we know not by what court, or in what case, for many years past, it has ever been questioned.
The liability of a private person, under precisely such circumstances, rests upon one of the oldest and best settled doctrines of the common law. We have again and again affirmed, that the liabilities of corporations, private and municipal, are no less extensive ; and that the maxim, respondeat superior, properly applies to-them, in the same manner, and to the same extent, as in its application to the liabilities of private individuals. Kerwhacker v. Cincinnati, Columbus and Cleveland Railroad Co., 3 Ohio St. 172; Keary v. The Same, Ib. 201. *However lawful a business, inay be, and whether pursued by an individual or corporation, the law exacts of those who uudretake it, a careful regard for the rights and interests of others. It must not only be lawful in itself, but also lawfully pursued, to shield from responsibility. It can not be accomplished safely to others, without the exercise of a proper degree of care and skill; which simply means, such care and skill as careful and prudent men, competent to the undertaking, exercise in their own affairs, when the loss, if any happens, is to be borne by themselves. The reasons upon which this doctrine rest, are not in the least diminished, when applied to injuries inflicted *97 by associations of men, endowed with corporate capacities, either for individual emolument or social convenience. They are still but individuals, pursuing their own interests, or common advantage; and it would be altogether inadmissible to permit them to use their acts of incorporation, granted at their own instance, and designed to afford them extraordinary facilities in the accomplishment of these purposes, to deprive others of acknowledged rights. Whether men act individually or collectively, or whether they pixrsue mere private gain, or social convenience, or governmental security, they are equally bound by the great law of social duty, to-so conduct themselves as not to injure others by their malice or negligence; and when they do, the highest considerations of right and justice require them to be held responsible, whoever may be injured, or by whomsoever it may be inflicted. Even the state is .not absolved from the moral obligation of making reparation in such cases; and it is only because her policy requires an appeal toiler justice, rather than amenability in her’ courts, that a remedy is denied.
To a certain extent these doctrines are not controverted by the plaintiff’s counsel, and in a limited sense he concedes the liability of municipal corporations for the negligent or unskillful conduct, of their agents and servants; but he insists that the building of bridges is, from its nature, the exercise of a power, public and Apolitical, devolved upon the city as a public officer of the state, and not a mere corporate power, and that the city engineer is a public ministerial officer of the municipality, and not a mere private servant or employe thereof, for whose conduct it can be made responsible.
We are wholly unable to see how the building of a bridge, when necessary as a part of the street of a city, is to be distinguished in principle from the performance of any part of the work that may be needed to accomplish the same purpose upon the land; or how the mode of appointing an officer, or the rank he may hold, or the particular work he may be intrusted to accomplish, can be of any importance in determining the liability of the corporation. The true inquiry in every case must be, does he act for the corporation, and under the command of its regularly constituted organs, and while acting in such capacity, has he injured the party complaining,, by his negligence or unskilifulness? If this question is answered in the affirmative, the relation of principal and agent exists, and the *98 liability of the former to respond for the defaults of the latter is established. How far this obligation extends, and in what cases it properly arises, is made very manifest in several late cases. To say nothing of the early reported cases, in this state, and the large number determined upon the circuit, it may be sufficient to refer to a scries of decisions in the State of New York, in which the subject has been fully and ably examined.
The case of Baily v. The Mayor, etc., of the City of New York, 3 Hill, 531, was brought to recover for an injury sustained by the plaintiff from the breaking away of a dam on the Croton river, erected for the purpose of supplying the city with water. The work was done by contractors, under the superintendence and control of water commissioners, appointed by the governor of the state, with the advice and consent of the senate; and it appeared that the injury arose from their want of skill and care in constructing the dam. On the part of the city, it was ^contended that the construction of the work was a power conferred upon the corporation for an exclusively public purpose, in the performance of which they were obliged to employ the commissioners appointed by the state, without the ability to discharge them, and substitute others in their places, and therefore that they could not be deemed the agents of the corporation. But the court were of a different opinion, and gave judgment for the plaintiff. It was admitted that a public officer, although liable for his own negligence or malfeasance in the discharge of his duties, was not so liable for the misconduct of those he was obliged to employ, the rule of respondeat superior not applying in such cases. But it was held, that the power conferred upon the corporation had for its principal object the private advantage of the inhabitants of the city, although incidentally benefiting the public at large; and inasmuch as the corporation might have’ accepted or rejected the amendment to its charter, it must be held to have accepted it upon the condition that the agents should be appointed by the state, and from that time forth they became the agents of the corporation, and fixed the liability of the corporation for their negligent and unskillful acts while in the discharge of their duty. The case was taken to the court for the correction of errors, where the judgment of the Supreme Court was affirmed. 2 Denio, 433.
In the case of the Rochester White Lead Co. v. The City of Rochester, 3 Com. 463, the property of the plaintiffs had been injured in consequence of the unskillful construction of a culvert, *99 built under tbe superintendence of tbe city surveyor. Tbe plaintiffs were allowed to recover, and in answer to the objection that tbe work was of a public character, in tbe performance of wbicb tbe corporation could not be held responsible, in a private action, for tbe misconduct of its officers, tbe court proceed to draw tbe distinction between tbe acts of a corporation, judicial in tbeir nature, and such as are merely ministerial, bolding an ordinance of tbe corporation, directing the construction of a work *within tbe scope of its powers, to be judicial, for which it can not be made responsible; but that the prosecution of a work thus authorized was merely ministerial, and that the corporation was bound to see it done in a safe and skillful manner.
The same distinction was taken in the case of Lloyd v. The Mayor, etc., of New York, 1 Seld. 369; in which the plaintiff recovered for the value of a horse, whose death was occasioned by the negligence of an officer of the city, in leaving open a public •sewer, during the night, while undergoing repairs. The court say: “ Tbe act wbicb caused tbe injury in the present case, was performed under the power and duty to clear the sewers of the city. Legislation, or, in other words, the establishing of rules and regulations in respect to cleaning tbe sewers, or keeping them in a state of cleanliness, is one thing, and tbe act of cleaning them is another. The power and duty to perform tbe latter is clearly ministerial, and falls under tbe class of private powers. The principle of respondeat superior consequently applies, and the judgment must be affirmed.”
These cases sufficiently indicate tbe true line that divides the exercise of public, or merely j udicial or legislative powers, conferred upon a corporation, from those ministerial or executive, and municipal in tbeir nature and character.
In the exercise of tbe first class, the corporation can not be made responsible for the misconduct of those intrusted with tbeir execution. It embraces all that description of duties, involving judgment and discretion in their exercise, and resulting in prescribing the rules by wbicb the conduct of individuals is to be regulated, or works, either public or municipal, are to be accomplished. And the immunity from responsibility to individuals is grounded upon tbe same public policy, that protects tbe judge or legislator in the exercise of his duties, and is designed to remove every obstruction to the free exercise of his judgment and discretion. It also includes, so far as the liability of tbe corporation is concerned, tbe accom *100, 101 plishment of purposes merely public, ^devolved upon the-corporation as a public officer or agent of the state, with no power to decline their performance. In such cases, the immunity of the state is transferred to its officer or agent, and he only is liable for his own direct misconduct. The power of prescribing rules and regulations is sometimes called judicial and sometimes legislative. It would perhaps be more accurate to say that it partakes of the nature of those powers, and therefore is attended with the same protection to those who exercise it; since it is perfectly clear that the legislature is incompetent to devolve any portion of its legislative power upon a corporation, or take from the judicial tribunals any part of the judicial power of the state, where the constitution has lodged it. C. W. & Z. R. R. Co. v. Clinton County, 1 Ohio St. 77. In such cases, the corporation exercises a wholly subordinate function, and father gives detailed application to legislation, than originates new rules; while its by-laws are to be deemed in the nature of compacts between the corporators, rather than acts of legislation.
But when a municipal corporation undertakes to execute its own prescribed regulations, by constructing improvements for the especial interest or advantage of its own inhabitants, the authorities are all agreed that it is to bo treated merely as a legal individual, and as such owing all the duties to private persons, and subject to all the liabilities that pertain to private corporations or individual citizens. To this class most clearly belongs the construction, repair, and maintenance of its streets. Nor does this conclusion give the least countenance to the supposition, that the corporation is liable for the misconduct of the officers it selects, when performing duties for or between private individuals. In such cases, the whole duty of the corporation is performed when the selection is made, and having no interest in, or control over, the performance of such services, no liability attaches.
No valid objection can be taken to the rule of damages adopted in this case. It is very true that the damages to be recovered against the corporation, must be the immediate, natural, an 1 *necessary result of the negligence or want of skill complained of. But the drawing off the water for the purpose of removing the materials, of which the bridge was composed, out of the canal, was as clearly the necessary result of its fall, as its obstruction of the water while in.
*102 Finding no error in the ruling of the court below, the judgment must be affirmed.